THE STATE OF NEVADA *v.* A. P. WATERMAN ET AL.

When two parties are jointly indicted but tried separately, the wife of one may be a witness for or against the other, if her husband cannot be benefited or injured by her testimony.

When the wife of an accomplice is called, her testimony is entitled at least to the same weight and effect as that of an accomplice.

When a Judge gives an instruction to the jury on any point which is clear and intelligible, we do not think he is bound to repeat it in language of counsel, which is substantially the same but less clear, and therefore liable to be misunderstood.

A certain instruction commented on and construed. The instruction not entirely free from ambiguity, yet, if properly construed, it contains the true rule of law.

The statute which requires the charge or instructions of the Court to be in writing, is not violated by the Judge telling the jury that he could not instruct them as to matters of fact.

The Court may always suggest to the jury a correction of their verdict as to form. The correction in this case was merely formal. Even if there had been a substantial difference, the new verdict was drawn by the foreman of the jury and assented to by the full panel, we see no reason why it should not be a good verdict.

When the defendant attempts to establish an *alibi*, which if established would show the impossibility of his connection with the offense charged, he takes on himself the affirmative of the proof. But it is not necessary he should establish his defense by incontestible or even by preponderating evidence. It is sufficient if his evidence is such as to raise a reasonable doubt whether he was present at the place where the offense was committed, or at a different place, and one which was inconsistent with the possibility of his guilt.

When the Court refuses to give an instruction containing a correct legal principle, and there is nothing in the transcript to show whether it was or was not applicable to the case in which it was asked, we may presume the refusal was on the ground that it was not applicable to the case on trial.

So, too, if the Court give an instruction which is wrong in regard to a mere abstract principle, which the record affirmatively shows had no application to the case on trial, this will not be held error.

But if the Court, on its own motion, gives an instruction which is clearly erroneous, it would be going very far for this Court to presume that the Court below was giving instructions on mere abstract principles having no connection with the case on trial.

In this case the recitals of the Judge in the instructions given, and other proceedings, we think, affirmatively show the defense of *alibi* was set up, and defendant was entitled to proper instructions on that head.

Evidence in regard to its credibility or the degree of conviction which it must produce may be divided into three classes: First—That which establishes a fact beyond *all reasonable doubt*. Second—That which establishes a fact by preponderating evidence. Third—That which only renders it probable that a fact may exist, or, in other words, *reasonably doubtful* if it does not exist.

When a defendant in a criminal case asserts, by way of defense, the existence of any fact which is physically incompatible with his guilt of the crime charged, it is sufficient to entitle him to an acquittal, if his evidence in support of that fact reaches only the third class.

APPEAL from the District Court of the First Judicial District, Sate of Nevada, Storey County, Hon. RICHARD RISING presiding.

The facts of the case are fully stated in the opinion of the Court. After the opinion was published a petition for rehearing was filed, and a response was made thereto by the Court.

*Pitzer & Keyser*, for Appellant, Waterman, made the following points:

*First*—Inadmissibility of the testimony of Mrs. Haines. (*Rex* v. *Neal et als.*, 7 Car. and Paine, 555; 1 Greenleaf's Ev., 134, 135; 1 A. C. L. 767.)

*Second*—Not giving instructions Nos. 1 and 4 of "Exhibit 1," Nos. 5, 7 and 11, of "Exhibit 2," in the language in which they were asked for by the defendant. (*People* v. *Williams*, 17 Cal. 142.)

*Third*—Error in the instruction to the jury in regard to the letter alleged to have been written by defendant, the Court in said instruction trespassing upon the province of the jury. (State Const., Art. VI., sec. 12; *People* v. *Levison*, 16 Cal. 99; Statutes 1861, p. 48, sec. 429.)

*Fourth*—Denial to defendant of the benefit of any doubt raised in the minds of the jury by the whole evidence, as to where the defendant was at the time of the robbery. (1 Whar. Crim. Law, p. 366, note, and pp. 368, 369.)

*Fifth*—That the Court gave oral instruction to the jury. (*People* v. *Beeler*, 6 Cal. 247; *People* v. *Demint*, 8 Cal. 423; *People* v. *Ah Fong*, 12 Cal. 347; *People* v. *Waapner*, 14 Cal. 437.)

*Sixth*—That the verdict is void, not being the verdict of the jury. (2 Waterman on New Trials, 363; *Perkins* v. *Wilson*, 3 Cal. 139.)

*Williams & Bixler*, for Respondent, made the following points:

The record does not show the alleged errors, if·errors they be, as to the drawing and qualification of Grand Jurors.

The Clerk of Lyon County sends certain papers to the Clerk of Storey County and certifies they are papers and proceedings in the case. The Clerk of Storey County incorporates them in the transcript, but they are no part of the record.

If the record is sufficient to justify a consideration of this point there is nothing in it. The statute was pursued. If it was not, the defendant in open Court expressed himself satisfied with the jury, and no exception was taken to the order refusing to set aside the panel.

35

The wife may testify for or against one indicted jointly with the husband if the record in the case tried would not be evidence for or against the husband. Generally when the husband may testify the wife may.

In this case the husband could testify—there existed no peculiar reason for excluding the wife. (Phillips on Evidence, 7th edition, vol. 1, pp. 79 to 81; also, part 1, vol. 2, notes 114 and 144; also, part 2, vol. 3, 1555; Wharton, 2d edition, 295, note 3 to p. 512; 1 Greenleaf on Evidence, secs. 364, 335, and note 1 to same sec.; 1 Mass. 15; 2 Humphreys, 99; 2 Ashmead, 31.)

In an appeal to this Court error must be affirmatively shown, and if the evidence is not in the record those instructions only will be held erroneous, which under no state of facts could be correct.

Error is assigned that the Court did not give a number of instructions in the language asked by counsel for defense. Two answers may be be made to this objection:

*First*—The Court did give the instructions in substance.

*Second*—The language used by counsel was ambiguous and inaccurate; this was sufficient reason for not adopting the instructions asked.

The instruction of the Court as to the effect of the proof in regard to a letter alleged to have been written by Waterman, does not instruct as to a fact, but merely as to what may be the effect of the existence of that fact if proved, which is legitimate. (*People* v. *Mahoney*, 18 Cal. 184; *People* v. *Borning*, 19 Cal. 445.)

When the defense is an *alibi* the burthen of the proof is thrown on defendant, and he must make out his defense by satisfactory evidence. All the authorities are this way except a note in Bennett & Heard's Leading Cases, to the case of *The Commonwealth* v. *McKei* (pp. 354 to 358.)

On the other side, (see Roscoe's Cr. Ev., p. 20; 1 Russell, 6th Am. edition, p. 483; Arch. Crim. Pl., 4th Am. edition, p. 116; 1 Bennett & Heard's Leading Cases, 111; *Coom* v. *York*, 9 Metcalf, and authorities there cited; 5 Cal. 129–30; 15 Cal. 482; 17 Cal. 284; 20 Cal. 519; 24 Cal. 234; *Com.* v. *Webster*, 5 Cushing.)

The verdict as originally rendered was sufficient. As corrected it was the verdict of the jury rendered by their foreman, and assented to by the entire jury, and therefore it was good.

By the Attorney General for the Respondent.

If the instruction in regard to an *alibi* was incorrect, still this is no ground for reversal, because there is no proof in the record that defendant introduced any evidence tending to prove an *alibi*. If the instruction was merely as to an abstract principle, having no relevancy to the testimony in the case, it cannot injure appellant. He must show affirmatively it did injure him. The presumption of law is that the judgment is correct, but there is no presumption of law as to whether instructions given by the Court are relevant to the case on trial, or mere abstract principles having no application to the facts. The Attorney General cited and commented on *The People* v. *Glenn*, 10 Cal. 37; *People* v. *L.*, 16 Cal. 98; *People* v. *Gloon*, 17 Cal. 171; and *Streeter* v. *People*, 2 Comst. 193.

On petition for rehearing, Williams & Bixler urged that if appellant was bound, as held by the Court, to take the affirmative in proving an *alibi*, it was not sufficient to raise a doubt as to whether the *alibi* was established; other parts of the petition are quoted and referred to in the response.

The opinion and response to the petition for rehearing were delivered by Justice BEATTY, the full Bench concurring.

In this case ·a joint indictment for robbery was found against the appellant and others. Before going to trial a *nolle prosequi* was entered as to one of the parties indicted; two of the accomplices (Haynes and Low) were admitted to testify as witnesses for the State, and two only of the accused (Waterman and Harris) were put on trial. The jury brought in a verdict of guilty as to Waterman, and failed to agree as to Harris. Waterman moved for a new trial and in arrest of judgment. Having failed in both motions, and judgment having been rendered against him, he appeals to this Court,

State of Nevada *v.* Waterman *et al.*

The first point made by the appellant is, that the Grand Jury which found the indictment was not properly drawn, and was composed of persons not qualified to act as jurors, because they had not paid their poll taxes and registered their names as voters. We see no irregularity in the mode of drawing, and we have decided in the case of the *State* v. *Salge* that it was not necessary that a person should have paid his poll tax and registered his name as a voter prior to last October to qualify him for jury duty. The second point, and one upon which counsel seem to rely with much confidence, is that the Court below erred in permitting Mary Haynes, wife of an accomplice in the robbery, to testify against appellant.

Counsel cite three authorities to sustain their position. The first case cited is *Rex* v. *Neal et al.*, 7 Carrington & Payne. This case does not sustain the position of counsel. We do not understand the Court there as deciding absolutely that the wife of the accomplice was incompetent to testify, but that if she did testify, that the Court would under the circumstances of that case consider her testimony as no better than that of an accomplice, and if no other evidence could be had tending to corroborate the testimony of the accomplice, would advise the jury to acquit. Some of the expressions of Greenleaf (another authority referred to) are general and comprehensive enough to sustain the position of counsel; yet from the concluding sentence, in section 335, it is evident to our minds Mr. Greenleaf was of opinion that in just such a case as this the testimony of a wife of an accomplice might be heard.

The same observations would apply to some general remarks made by Mr. Wharton in his work on Criminal Law, to be found in sections 767 and 769 of that work. But these general propositions are qualified by other sections. In section 768 Wharton uses this language : " H. D. S. Z. and T. were jointly indicted for murder, and a separate trial awarded to T. Upon the trial of T. he offered to prove an *alibi* by the wives of H. and S. It was held that they were competent witnesses. The Court, after reviewing the authorities upon the question, say : ' The mere fact that the husband is a party to the record does not of itself exclude the wife as a

State of Nevada *v.* Waterman *et al.*

witness on behalf of other parties, but the rule of exclusion is only to be applied to cases in which the interest of the husband is to be affected by the testimony of the wife.' "

This quotation, we think, contains the true rule. When the husband is jointly indicted with others the wife cannot testify if the effect of her testimony is to injure or benefit her husband. But when her husband can derive no benefit nor receive any detriment from her testimony, we see no objection to her testifying. We cannot conceive in this case how the testimony was to benefit or injure her husband. Our statute forbids the conviction of any one on the testimony of an accomplice without corroborating testimony. The Court instructed the jury in effect that the evidence of Mrs. Haynes was not to be received in corroboration of her husband's testimony, to justify conviction without other corroborating testimony. With this instruction certainly the prisoner has no right to complain. Her testimony was only allowed to have the weight and effect that is given to the testimony of an accomplice. We think there was no doubt she was competent to testify, and her testimony was at least entitled to this degree of weight and efficacy.

The next error complained of is that the Court did not give certain instructions in the precise language in which they were asked. The facts appear to be that defendant handed certain instructions to the Court. None of them were read in the hearing of the jury until the Court had examined them. The Judge marked certain of the instructions "given," and read those so marked to the jury. Upon *one* instruction he marked "not given," upon some five others he marked "given in substance." These last, it would appear, were not read to the jury, but a reference to the written charge of the Judge shows that they were all "given in substance" in his general charge. The charge contains not only the substance but almost the same language contained in these instructions, with the exception of the correction of some grammatical and verbal inaccuracies in the instructions asked. We think when a Judge gives a charge on any particular point in clear, intelligible and correct language, it is not error to refuse to repeat it in language which, from being incorrect, ungrammatical, or not sufficiently guarded or restricted in its terms, is liable to be misunder-

stood by the jury. The next error assigned is that the Court erred in giving instructions to the jury in regard to the effect to be produced by a certain letter alleged to have been written by the defendant, in case they should find that he did write it. The entire charge on this point is as follows : " From all the testimony in the case upon the question, you will determine whether the letter purporting to have been written by Waterman to Low is genuine or not, defendant Waterman having attacked it as not being genuine. If you should find that the letter is genuine, this is evidence which you should duly consider as corroborating the statements of the accomplices against the defendant, Waterman, tending to connect him with the commission of the alleged offense. But this letter of itself should not be considered as tending to corroborate the statement of Low and Haynes as to the defendant, Harris." We think there is some language in this part of the charge that might have been more guarded, yet we are hardly prepared to say there is error in the charge. As we understand it, it was rather advice to the jury to weigh and consider that letter, and determine what weight and effect it should have, if any, in corroborating the testimony of accomplices against Waterman, than instruction that it should have weight and effect for that purpose. The language in this instance *is* ambiguous, and *it* would be well if the case is retried to correct that ambiguity.

During the time the jury were out consulting as to a verdict, they came in and propounded some question to the presiding Judge, in writing. He informed them the question they asked was one relating to facts of which they were the judges, and he could give them no instructions on the subject. It is complained that this is a violation of the statute which requires the Judge's charge in felonies to be in writing. We think this was not a violation of the spirit or intention of the statute. It was not the intention of the statute to prevent the Judge addressing any remark to the jury, but only to reduce to writing those instructions in regard to the legal propositions involved in the case, and which might be the subject of review in this Court. Probably in almost every trial of a felony case, the Judge addresses some words to the jury, which are in some respects to be regarded as instructions, yet such

conduct of the Judge is not held to be error. A very common method is for a Judge to tell the jury he will read the definition of the offense charged from the statutes, and then read what the statute says in defining the offense. Here the preliminary information or charge is given orally, but the body and substance read from the statutes. We are not aware this has ever been claimed to be error. Certainly this would be full as objectionable as telling the jury he could not charge them on a certain point.

It is also claimed that the verdict rendered in this case is not the verdict of the jury, because when the foreman first handed in his verdict the Court examined it and suggested that it was not exactly formal, and on that suggestion the foreman corrected it, handed it to the Clerk, and it was recorded as corrected. After being recorded it was read to the jury, and being asked if it was their verdict, they all assented to it. The verdict as originally written read as follows :

" *The State of Nevada* v. *A. P. Waterman.*—We, the undersigned, jurors in the above case, find a verdict of guilty, as charged in the indictment.

                    " J. H. TILTON, Foreman."

As corrected, it reads as follows :

" First District Court—*The State of Nevada* v. *A. P. Waterman* and *C. A. Harris.* We, the undersigned, jurors in the above case, find a verdict of guilty, as charged in the indictment against A. P. Waterman.

                    " J. H. TILTON, Foreman."

We think there is nothing in this point, because both verdicts mean the same thing, and it is always competent for the Court to suggest the correction of a verdict in mere matter of form. Even if there had been a substantial difference between the two verdicts, we cannot see what objection could be raised to the latter verdict after all the jury assented to it. The last point we shall notice is, that in regard to an instruction given, and one refused, as to how far the defendant was to have the benefit of any doubt in the minds of the jury in relation to

his guilt or complicity in the robbery charged. The defendant Waterman asked for the following instruction, which was refused: " If all the circumstances shown in the case leave it reasonably uncertain whether Waterman was in Virginia when the robbery was committed, the jury must acquit him." We extract from the general charge the following sentences which bear on this point:

" If from the evidence there is a reasonable doubt remaining in your minds as to the guilt of the defendants, or either of them, he or they must have the benefit of that doubt and acquit. A reasonable doubt is such a one that would influence or control you in your ordinary affairs and business transactions. You would not be justified in convicting the defendants, or either of them, if the evidence goes no further than to establish a probability of their guilt, but you must find that the evidence establishes the truth of the facts charged in the indictment, to a reasonable and moral certainty, a certainty that carries and directs the understanding and satisfies your reason and judgment." " If, in reviewing all the testimony introduced on the part of the State, you are satisfied of the guilt of the defendants, under the rules given you by the Court, you will then consider the defenses set up by the defendants, and in considering that of *alibi*, you will bear in mind that it devolves upon the party urging it to establish the same to your satisfaction by evidence."

" It is not sufficient to warrant an acquittal that he merely raises a reasonable doubt as to whether the *alibi* is established, but, as before stated, you must be satisfied of its truth by testimony." " If you believe from the testimony that the defendant, Waterman, * * * at the time alleged, was in the City of Virginia you must acquit him." It is to be observed that the *alibi* attempted to be set up by the defendant was that he was in the City of Virginia at the very identical time the robbery was alleged to have been committed at a point several miles distant in the country, and it was not pretended Waterman was connected with the robbery in any other way than being in the country and assisting at the very point where the robbery was done. The charge of the Judge, as given, indicates that it was the opinion of the Court that

the jury should acquit if they had a reasonable doubt of the guilt of the prisoner, and that doubt arose from any other consideration than the impression made on their minds by the proof as to an alibi. But if such a doubt arose from the evidence of the prisoner introduced to prove an *alibi*, then he was not to have the benefit of that doubt. Whilst the language of the instruction is not as clear on this proposition as it might have been, the refusal of the Court to give the instruction asked by defendant on this point clearly shows such was the theory of the Court. Such is the theory assumed by the counsel for the State in this Court, and no doubt it was argued to the jury on that theory, and if that be not the correct theory, the prisoner was entitled to the instruction he asked. The instruction was not refused on the ground that the defendant Waterman might have been guilty of some connection with the robbery, without being present at the place where it took place, because the Court instructs the jury that if he was in Virginia when the robbery was committed, they must acquit. To state the proposition more nearly in the language of counsel, it is this: That when the defendant set up the "plea of *alibi*," the burden of proof was cast on him by the law, "and that he did not comply with the rule requiring him to establish the fact by merely raising a doubt as to whether he had done so." The case, as presented to the jury on this theory, must assume one or the other of these dilemmas—either the jury are instructed that if they have a reasonable doubt as to the guilt or innocence of the defendant, they must acquit, and at the same time are told that if they have a reasonable doubt as to whether the prisoner was present at the robbery, aiding and assisting therein, as was attempted to be shown by the prosecution, or was at the time of the robbery at another place and entirely disconnected with the robbery, this was no ground at all for acquittal. Or else, on the other hand, the instructions and theory on which the case was submitted to the jury must be understood to have been this: If you have a reasonable doubt as to the guilt or innocence of the prisoner, and that doubt arises from a consideration of the evidence in the case other than that in regard to the attempted proof of an *alibi*, you must give him the

benefit of that doubt and acquit. But if your doubt of his guilt or innocence only arises from the consideration of the evidence he has introduced, tending to prove an *alibi*, he is not entitled to the benefit of that doubt. In such case there must be such a preponderance of evidence as to *satisfy* you (not merely to raise a reasonable doubt on that point) that when the robbery was committed he was in Virginia City, and therefore not connected or not shown to be connected with the robbery. Little need be said on the first branch of this dilemma. The whole proof introduced by the State went to show that the defendant was present at the robbery. There was none to show, as we are bound to infer from that part of the evidence contained in the record and the instruction of the Court, that he was connected with the robbery in any other way than by his actual presence. None to show that he had aided and abetted in planning the robbery to be executed by others. If then they doubted whether he was present at the robbery, how could they fail to doubt whether he was guilty or innocent. Such a position is too absurd for any sane man to assume. It would be equivalent to the jurors saying : We have grave doubts whether Waterman was present, or had anything to do with the robbery, but we are satisfied he is guilty.

Let us see if the other horn of the dilemma presents such a case as can be sustained on reason or authority. Counsel for the State refers to many authorities to show that when one man kills another, especially if the killing is intentional, the burthen of proof to justify or extenuate the killing is thrown on the defendant, and argues that if a defendant indicted for murder must assume the burthen of proof and show satisfactorily the killing was justifiable, excusable, or under circumstances which would extenuate his offense, that the same rule would apply when the prisoner attempts to prove an *alibi*. We can see no analogy in the two cases.

When one man intentionally kills another, and the slayer is not a civil or military officer, soldier, sailor or marine, acting in the discharge of his duty, the law presumes malice, and consequently that the killing is murder. That legal presumption must be rebutted by sufficient evidence to release the defend-

ant from the penalty imposed for murder. But when a robbery is committed the law does not presume that a prisoner indicted for that robbery was or was not at any particular place.

There is no presumption as to the locality of the party indicted, unless you can say the legal presumption of the prisoner's innocence involves the presumption that he was not at the place where the offense was committed. Certainly there is no presumption that he was not at any other given place. Then the prisoner in attempting to establish an *alibi*, certainly has no legal presumption to overcome, and the authorities cited as to presumption in cases of homicide have no application. It is said that where a prisoner attempts to prove an *alibi*, he has the affirmative, the burthen of proof lies on him, and he must make that proof satisfactory to the minds of the jury. It cannot be denied that in such case the prisoner has the affirmative and burthen of proof. If one be indicted for committing an offense at Carson, it is not sufficient for him to say "I was at Virginia when the offense was committed," and call on the State to prove he was not there, but he must take the affirmative of the case and prove he was at Virginia. But we cannot conceive how the fact that defendant is to assume the affirmative and take the burden of proof on himself, affects the question as to the degree of conviction that proof must produce on the minds of the jury to justify them in a verdict of not guilty. The humanity of the law provides that where there is a reasonable doubt of the guilt or innocence of the accused, he shall be entitled to an acquittal. By what possible process of reasoning can one arrive at the conclusion that it makes any difference whether that doubt is raised in the minds of the jury by the proof of one fact or another. When the State proves that at a certain time the prisoner was at one spot committing a certain crime, he proves that at the same moment he was at an entirely different place, it is but an indirect mode of showing the evidence of the State was false. The witnesses on one side or the other are either mistaken or perjured. If the jury are balanced in their mind as to what set of witnesses are perjured or mistaken, shall they find a verdict of guilty? Such a proposition would shock the sense of justice of any reflecting mind. Let us suppose a case: A stage is stopped by a robber and the

passengers robbed. A is indicted for the robbery. Several passengers are sworn and say that A looks exactly like the man who robbed them, but they have since seen B who looks exactly like A, and they cannot pretend to say whether it was A or B who robbed the stage. Another passenger is called, who says : I know it was A ; A has a scar over his right eye, and B one over his left ; I was acquainted with A and B before the robbery was committed ; I knew they could only be distinguished one from the other by the fact that A had a scar over the right eye, and B over the left ; I looked at the scar and am positive it was over the right eye, and A was the man who committed the robbery. Here the State closes its case. A introduces another one of the passengers on his behalf, who says : I, too, was acquainted with A and B before the robbery ; I was aware they could only be distinguished by the scars over their eyes ; I looked at the scar and am positive the scar was over the left eye ; B was the man who committed the robbery ; A was not there. If the witnesses were equally respectable and intelligent here is an exact balance of testimony. The State having made out a clear *prima facie* case, and the prisoner not being able, when he takes the affirmative, to produce preponderance of testimony in his favor, must be convicted upon the theory established in this case. The State could then turn round and convict B on the same testimony, only substituting the witness who testified in favor of A in the room of the one who testified for the State in the former trial. Two parties would thus be punished for the same offense, when it was evident that only one was guilty. Any rule leading to such a result must be erroneous. Yet there is no difference in principle between proving an *alibi* and proving a mistake as to identity. In each case the defendant must assume the affirmative. The only thing we find in the books at all tending to support the position taken by counsel for the State is a loose expression of Chief Justice Shaw, in the charge he gave to the jury in the case of the *Commonwealth* v. *Webster*. The Chief Justice says :

"In the ordinary case of an *alibi*, when a party charged with a crime attempts to prove he was in another place at the time, all the evidence tending to prove that he committed the

offense, tends in the same degree to prove he was at the place when it was committed. If, therefore, the proof of the *alibi* does not outweigh the proof that he was at the place when the offense was committed, it is not sufficient."

But he was not then speaking of the degree of doubt or certainty which was to be produced on the minds of the jury. He was only speaking of the manner in which contradictory evidence should be weighed and balanced in their minds. The language used by the same Judge in another paragraph of the same charge, shows to our mind that he thought any proof in regard to an *alibi*, or any similar defense which would produce *reasonable doubt* in the minds of the jury, would entitle the prisoner to an acquittal. The learned Chief Justice says : " We now come to consider that ground of defense on the part of defendant which has been denominated, not perhaps with precise legal accuracy, an *alibi ;* that is, that the deceased was seen elsewhere, out of the medical college, after the time, when, by the theory of the proof on the part of the prosecution, he is supposed to have lost his life at the medical college. It is like the case of an *alibi* in this respect, that it proposes to prove a fact which is repugnant to and inconsistent with the facts constituting the evidence on the other side, so as to control the conclusion, or at least render it doubtful, and thus lay the ground of an acquittal."

The rule of law and of common sense is, that where there is a reasonable doubt as to whether a prisoner has committed the act or offense with which he stands charged, he must be acquitted, whether that doubt arises from a defect in the evidence introduced by the State or from the evidence introduced in rebuttal by the defendant. We speak, of course, in this case, of doubts as to the commission of an act, not of doubts as to intention or motive in cases of homicide which, as we have shown, stand on a different footing. The charge given by the Court on this subject was not clear and satisfactory. It was certainly capable of a construction injurious to the rights of the prisoner. And it is beyond all question that if we are right in our conclusions as to the law of the case, that defendant was entitled to have the tenth instruction which he asked for given to the jury.

After the opinion in this case had been nearly prepared, the Attorney General filed a brief raising a point which had not been made by the counsel who argued the cause, and who filed the original brief on behalf of the State. The new point raised by the Attorney General is, that this Court ought not to reverse a case, because the Court below may have erred in a mere abstract proposition laid down in the instructions *given*, if that proposition has no practical bearing on the case. And that when an instruction is given by the Court, and there is no bill of exceptions showing or referring to the evidence on which that instruction is based, this Court is not to presume that there was such evidence, but to presume in favor of the correctness of the judgment, and consequently to presume that this instruction was a mere abstract proposition, having no reference to the evidence in the case, and therefore perfectly immaterial. We suppose in the absence of any bill of exceptions stating what the evidence in a case was, that the refusal of a Judge to give an instruction about a legal proposition which might or might not be involved in the trial of such a case as was before the Court, would not be error. Because we would suppose the instruction might have been refused, because there was no evidence to make it applicable to the case. So, too, if it appears affirmatively from the record that the Court has given a wrong instruction about a mere abstract principle of law, which had no application to the case on trial, this will not be such error as to reverse the judgment. (See *Shorter* v. *People*, 2 Comstock, 193.)

But we think it would be pushing presumptions in favor of the judgment rather too far to presume, in order to support the judgment, that instructions given by the Court on its own motion (not at request of counsel on either side) were mere abstract propositions, having no connection with the case on trial. But without determining this general proposition, let us see what were the facts of this case as connected with the instructions on the subject of *alibi*. Defendant Waterman was indicted for robbing a stage. The little testimony in the record shows the robbery was committed on the road from Carson to Virginia. The Judge, in the instruction given by himself on his own motion, tells the jury, after weighing the

testimony given by the State, "they will then consider the defenses set up by the defendants, and in considering that of *alibi*, you will," etc.   Again he refuses to give the instruction asked by the defendant Waterman, as to there being a reasonable doubt of his having been in Virginia when the robbery was committed, but, on his own motion, gives one to the effect that if they believe (a reasonable doubt on this subject was not enough) Waterman was in Virginia at the time the robbery was committed, they must acquit.   These instructions, together with the indorsement of the Judge thereon, are, by statute, made a part of the record without being included in the bill of exceptions.   Do not the instructions given, and the action of the Court in refusing to give No. 10, asked by Waterman, carry conviction to the mind, beyond a reasonable doubt, that there was proof introduced by Waterman tending to show that he was in Virginia City when the robbery was committed, and not at the place where it was committed?

To suppose otherwise would be not to suppose merely that the Judge made a grave error in giving instructions about a matter not involved in the case before him, but we must presume he acted in a manner almost indicative of insanity.

We indulge no such presumptions.   We think the record does affirmatively show that one of the defenses attempted by the defendant Waterman was to prove an *alibi*.   That it is not shown in the most regular manner, it must be admitted. The defendant's counsel should by some direct statement in a bill of exceptions, or reference to evidence in such bill, have shown that this defense was attempted to be established by competent testimony.   But an oversight of this kind by counsel ought not to prejudice a defendant, where it is evident an error has been committed prejudicial to his rights.

The judgment of the Court below must be reversed and a new trial granted, and it is so ordered.

---

## RESPONSE TO PETITION FOR REHEARING.

The counsel for respondent in this case commences his petition by a statement that it is the general impression of the bar that the opinions of this Court, like the laws of the Medes and

Persians, are unchangeable, and, therefore, he has but little hopes of success, but will, nevertheless, attempt in plain and unmistakable but respectful language to point out the errors which, in his opinion, the Court has fallen into.

We will say for the benefit of the gentleman and the bar at large that the business before the Court has not been great. That we have had ample time to examine thoroughly all cases submitted to us. We have never failed to examine every authority cited that conflicted, or seemed to conflict, with our views of any case under advisement. We have not only done that, but we have generally examined many more authorities than were cited. Having given a thorough examination to all cases submitted to us, we have not often deemed it necessary to grant rehearings.

Whilst we cannot grant rehearings merely because counsel differ with us in opinion, we certainly shall not take exception to the course of counsel in any fair argument in refutation of the views of the Court.

Counsel complain that the opinion of the Court does them injustice in two particulars :

*First*—In stating that they did not make a point subsequently urged by the Attorney General.

*Second*—In misstating their theory as to certain points in the case.

With regard to the first point, perhaps it would have been more correct to have said that the point presented by the Attorney General was not *particularly* urged by counsel who argued the cause. It is true, as counsel state, that in the third point of their brief they lay down the general proposition that error must be affirmatively shown, and when the whole of the evidence does not purport to be given in the transcript, only those instructions will be held erroneous which could not, under any circumstances, be otherwise than erroneous and tending to prejudice the defendant. This, as a general assignment of error, would be sufficient to cover the point discussed by the Attorney General.

But there was no attempt, as far as we recollect, in the oral argument, and certainly none in the brief, to apply the general principle to this particular point.

State of Nevada *v.* Waterman *et al.*

It was not claimed, so far as we are aware, that the record did not show that this was a case in which it was proper that instructions should be given as to the effect of proving an *alibi*.

But it was urged, both in the brief and oral argument, that the instructions on the subject of *alibi* were perfectly correct.

The position was never once taken by the original counsel for respondents, so far as we are aware, that it was immaterial whether those instructions contained the law or not, because of the absence of evidence showing their applicability to this case. It was only the Attorney General who urged and attempted to sustain this proposition.

We can assure counsel that we did not and do not desire to do them injustice in this or any other respect.

Nor can we conceive how the fact that the Court mentions they did not take an untenable position could be construed as a reflection on the care or ability of counsel. Had the Court held the point well taken, then indeed the opinion of the Court might to some extent have been considered as a reflection on them. This Court is rather disposed to commend the discretion of counsel in not taking untenable positions.

With regard to the second point complained of by counsel, we will say that we first stated what we supposed their theory to be. We stated the theory in a manner that was at least rational, though not law.

But as we were not perfectly certain that we did state the theory as they wished to be understood, we then stated the gist of their proposition in the very language of the brief. If we misunderstood their proposition, there was their own language to correct us.

They have written a long argument on petition for rehearing, and after reading it over a number of times carefully, we feel unwilling to state what are the legal propositions contained in the petition lest we should inadvertently do counsel injustice.

We will not attempt to answer that which is to us somewhat obscure, but if possible we will put our own views in language that cannot be misunderstood, only referring to a few portions of the petition which can help to elucidate our ideas.

36

In deciding as to the propriety of the instructions in regard to the effect of proving an *alibi*, we assumed that there was no proof offered to the jury that Waterman was connected with the transaction in any other way than by his presence at the actual scene of the robbery. In our original opinion we pointed out the reasons why we assumed that to be the fact. We think these reasons need not be repeated.

Taking it for granted, then, that the proof against Waterman did tend to prove that he was actually present at the robbery, aiding and assisting therein, but did not tend to show that he was otherwise connected therewith, let us examine the instructions given and refused. Under this state of facts then the Court gave this instruction:

"*If in reviewing all the testimony introduced on the part of the State* you are satisfied of the guilt or innocence of the defendants *under the rules given you by the Court,* you will then consider the defenses set up by the defendants; and in considering that of *alibi* you will bear in mind that it devolves upon the party urging it to establish the same to *your satisfaction* by evidence. It is not sufficient to warrant an acquittal that he merely raises a *reasonable doubt* as to whether the *alibi* is established; but, as before stated, you must be satisfied of its truth by testimony. If you believe from the testimony that the defendant Waterman at the time alleged was in the city of Virginia, you must acquit him."

We have italicised part of the instruction to call attention to it. If the instruction means anything which is not absolutely nonsense, it means this: "You will first consider the evidence of the State, and if that, standing alone, produces on your minds a conviction beyond all reasonable doubt of the guilt of the prisoner, you will then consider the evidence given by defendants, and in considering that which tends to prove an *alibi*, you must bear in mind that it is not sufficient for the defendants, or either of them, to have produced on your minds a reasonable doubt as to whether they were present at the place of robbery, or were at a totally different place when the felony was committed. Reasonable doubt on this subject is not sufficient, there must be a preponderance of evidence tending to establish the *alibi*. In other words, the evidence which

the prisoner introduces, tending to show he was in Virginia or Carson, as the case may be, at the time the offense was committed, must be *stronger and less susceptible of doubt* than that introduced by the State to show they were not at those cities when the offense was committed, but at a point between the two, where the stage was robbed."

If it does not mean this, then it means that the jury may believe from the testimony of the State that the prisoners were, beyond a doubt, at the place of robbery at a certain hour, and may also believe from the testimony of the defendants that *probably* at the very same moment of time they were at a totally different place. In other words, in order to convict Waterman you may believe that he could be corporally present at two different places at the same time. This, it appears to us, is utter nonsense.

The instruction refused was this : " If all the circumstances shown in the case leave it reasonably uncertain whether Waterman was in *Virginia* when the robbery was committed, the jury must acquit."

The petition says, when reduced to plain English, this means : " The defendant Waterman *alleges* that at the time of the commission of the robbery he was in Virginia. If he has made sufficient proof to make it *reasonably uncertain* whether he was in Virginia when the robbery was committed, the jury must acquit."

We admit the language used by petitioners is equivalent to that of the instruction refused. But, say the counsel, if the instruction had been in this form it would have been erroneous to refuse it. " If all the circumstances shown in the case leave it reasonably uncertain whether Waterman *was at the place* of robbery when it was committed." Now we cannot see the difference between the two. If it was reasonably uncertain whether he was or was not in Virginia it certainly must have been at least equally uncertain whether he was at another place at one and the same time. For according to the laws of nature a man cannot be at two places simultaneously.

Suppose the case had been tried where special verdicts are allowed in criminal cases and the verdict had been in this form :

"We, the jury, are unanimously of the opinion that the defendant Waterman was, beyond all reasonable doubt, present at a point about ten miles south of Virginia on the night of the 21st of May, 1865, when the stage was robbed, and was then aiding and assisting in the robbery as charged in the indictment, and we find the facts so to be. We come to this conclusion from the clear and satisfactory evidence of the prosecution."

"On the other hand, the prisoner introduced evidence almost as clear, satisfactory and convincing that he was at Virginia, ten miles distant from the scene of the robbery, when it occurred. There is a very slight shade of difference between the strength of the evidence proving he was at the robbery, and that proving he was at Virginia, though there is a slight balance in favor of the former proposition."

"Whilst, therefore, the proof of an *alibi* is very clear, strong and free from all suspicion of fraud, deception or trick, we cannot say there is a preponderance of testimony proving this defense, unless we may indulge in the theory of a party being at two places at the same time. We find as a fact the defendant has established his alleged *alibi* by clear, satisfactory, unimpeached and unsuspected, *but* not *preponderating*, testimony. With this explanation we leave it to the Court to determine whether the prisoner should be sentenced."

Would any Judge pass sentence on a prisoner under such a finding? If so, we think he would have very little idea of the humanity of the law.

Counsel for respondent, in their petition, lay down these three propositions as containing the gist of their whole case:

"*First*—That when the defendant alleges an *alibi* the burthen is cast upon him to prove it—a proposition clearly admitted by this Court in its opinion, and established by the authorities cited in our original brief.

"*Second*—That a fact which the defendant must prove, must be established satisfactorily by a preponderance of testimony. To which we again cite all the authorities mentioned by us.

"*Third*—That the *fact* so to be established is not *proven* by testimony only sufficient to raise a *doubt* whether such *fact* does exist. To which we also cite the same authorities, and

beg to add that the reverse of the proposition would place one in the ludicrous position of saying that you must *not prove* a proposition which you *must prove*."

Let us endeavor to answer these propositions. Proof in civil or criminal cases never amounts to mathematical demonstration. What we call proof is usually documentary evidence or the oral testimony of witnesses, directly declaring certain things which are material to the issue on trial to exist, or to have transpired, or else declaring other things not material in themselves to exist, or to have transpired, from which the Judge or jury may reasonably infer that the material facts do exist or did transpire.

If ten of the most respectable men in any community were to swear positively that they saw A B at a certain place at a certain time, it might not be true that A B was there.

There might have been a mistake as to identity, or some other mistake. Then, in speaking of proof in judicial trials, let it be understood that positive, unmistakable proof is never meant.

Practically, proof may be divided into three classes with regard to its strength or the force of conviction it produces on the tribunal before which it is introduced.

*First*—That which establishes a fact beyond all *reasonable doubt*, but not to an absolute mathematical certainty.

*Second*—That which establishes a fact by preponderance of evidence. In other words, render it more probable that the fact does exist than it does not.

*Third*—That evidence which renders it *probable* that a fact *may exist*, or, in other words, render it *reasonably doubtful if it does not exist*, but still does not prove the fact by a preponderance of evidence.

It is a rule of law that in criminal cases the defendant can only be convicted by evidence of the first class, with this exception to the general rule: Whenever the prosecution establishes a voluntary killing on a trial for murder by proof of the first class, the law presumes malice and dispenses with all proof thereof by the prosecution.

If the defendant attempts to rebut this legal presumption, Courts have generally held that it is not sufficient to raise a

doubt as to whether the defendant was actuated by malice or an excusable motive in taking life.

But there must be a preponderance of evidence in favor of defendant on this point. He must establish his defense by evidence of the second class, as it regards strength or force of conviction which it produces.

In other words, the body of the crime, the *corpus delicti* as the lawyers call it, must be established by testimony of the first class.

The motive of the act may be established, in the absence of proof, by a presumption of law. Or, if proof be introduced on the subject *pro* and *con*, the defendant must suffer, unless his proof is reasonably adequate to show an excusable motive, and stronger than the prosecution to prove malice.

The defendant must establish his justifiable or excusable motive by evidence of the second class.

But, if the defendant alleges in his defense some fact to exist which is so absolutely inconsistent with the alleged charge that it is physically impossible for both to be true, then, if the prisoner's testimony, taken with all the other testimony in the case, leaves a reasonable doubt on the mind of the jury whether his inconsistent fact does or does not exist, it necessarily leaves a reasonable doubt as to whether he is or is not guilty.

The true rule is, that a prisoner has only to establish a fact which is totally inconsistent with the theory of his guilt by evidence of the third class, as it regards strength and degree of conviction to be produced by that evidence. But let us not be misunderstood on this subject. All the evidence in the case, whether that of the prisoner or the prosecution, must be considered and weighed with all other testimony bearing on the same point.

The prisoner might introduce evidence of an *alibi*, which taken by itself would produce conviction beyond a reasonable doubt of the truth of his alleged defenses, but which, taken in connection with the other proof, would not raise the slightest presumption of the truth of the alleged *alibi*. Alone, it would be proof of the first class; in connection with the proof on the other side, it would not reach the third class of proof as we have classified evidence in this opinion. Thus, A is accused

State of Nevada *v.* Waterman *et al.*

of murdering B. The proof is very strong that he did kill B, and threw his body into a river or sea, from which it has never been recovered. A introduces proof nearly as strong, showing B is now living in some other State or country.

If the jury has strong doubts as to whether B is not alive, could it be possible that they should be clear and without doubt that he was murdered by A? In these days, when miracles have ceased, such propositions are absurd.

The petition lays down this proposition as an axiom, that a fact is not proven by testimony which only raises a doubt as to its existence. Such a proposition only shows that counsel attaches a wrong idea to the term proof; he confounds proof as used in judicial trials with the same word as applied to mathematical demonstrations.

If two respectable men were to swear positively to the existence of a fact, counsel would probably consider it *proved*. Yet, twenty other men equally reliable, and having as good opportunity of knowing, might swear to the contrary. Then certainly the fact would be left in doubt. So counsel would say of this particular fact, it was at one time *proved;* it afterwards turned out it was not *proved*.

This is a confusion of ideas and terms. Facts are *proved*, as that word is used in speaking of civil or criminal trials, by proof more or less conclusive or satisfactory.

If evidence is introduced tending towards the establishment of a fact, it is in some sense proved, though the proof may be very unsatisfactory. It may be proved so as to raise a conviction of its existence beyond a reasonable doubt; to raise a very strong presumption of its existence, or only a slight probability of its existence; raising a reasonable doubt of the existence of a fact is not only proof, but sufficient proof in some cases to influence the judgment of a Court or verdict of a jury.

The authorities cited were all carefully examined before the former opinion was written, except that of Mr. Webster.

The opinion of Chief Justice Murray is not in point, because the motive of parties in homicide cases is not required to be proved by the same class of evidence as the *corpus delicti.*

The authority of Chief Justice Shaw is no authority at all, for the same opinion from which it is quoted shows in another

part thereof that he did not mean what his authority is quoted to sustain.

In regard to the authority of Mr. Webster, we will simply say, we are not in the habit of looking into the arguments of lawyers addressed to juries for authority upon any legal proposition.

The rehearing is denied.